# EXHIBIT "A"

Case: 20-1133, Document: 20, Filed: 11/03/2020, Page 1 of 12
Case 20-50069-btb    Doc 56-1    Entered 12/23/20 16:18:08    Page 2 of 13

FILED
NOV 3 2020
SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JASON ANDREW LARSEN and CAMI CHERRIE LARSEN,<br>      Debtors. | BAP No. NV-20-1133-FBG<br><br>Bk. No. 3:20-bk-50069-BTB |
| CHRISTOPHER BURKE, Chapter 7 Trustee,<br>      Appellant,<br>v.<br>JASON ANDREW LARSEN; CAMI CHERRIE LARSEN,<br>      Appellees. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Bruce T. Beesley, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Jason Andrew Larsen and Cami Cherrie Larsen

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

(continued...)

were living in Nevada when they filed for bankruptcy protection and claimed the Nevada homestead exemption for their house located in Washington state. Chapter 7 trustee Christopher Burke ("Trustee") objected, arguing that the Nevada homestead exemption does not extend to extraterritorial property. He also argued that the Larsens' Washington property was not their homestead because they had not resided at the property for over six years while Mr. Larsen was stationed elsewhere in military service. The bankruptcy court overruled the objection, finding that the Larsens intended to return to their home in Washington and holding that they should not be denied a homestead exemption merely because the family was away due to Mr. Larsen's military service.

We hold that the Trustee argued for the correct result, although not for correct reasons. The Larsens were not entitled to any Nevada exemptions because they were domiciled in Washington. Accordingly, we VACATE and REMAND.

## FACTUAL BACKGROUND

A.   **Prepetition events**

Mrs. Larsen has owned a house in Oak Harbor, Washington (the "Washington Property") as her separate property since 2003. She and her

---

[1](...continued)
Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

husband resided in the Washington Property until 2014.

Mr. Larsen has served in the U.S. Navy for over twenty-five years. He was stationed in Santa Rita, Guam between July 2014 and August 2017. In September 2017, he was transferred to a naval air station in Fallon, Nevada. In total, the Larsens lived outside of Washington for nearly six years prior to the petition date. During that period, they used the Washington Property as a rental property at times. It was occupied by a family member on the petition date.

**B.    The Larsens' chapter 7 bankruptcy petition**

On January 18, 2020, the Larsens filed a chapter 7 petition in the District of Nevada. They listed their address as Fallon, Nevada and indicated that they filed the petition in the District of Nevada because they had lived there longer than any other district in the 180 days before the petition date.

The Larsens scheduled the Washington Property as Mrs. Larsen's separate property. They claimed a homestead exemption in the Washington Property under Nevada Revised Statutes ("NRS") sections 21.090(1)(*l*) and 115.050 for "100% of fair market value, up to any applicable statutory limit."

**C.    The Trustee's objection**

The Trustee filed an objection to the homestead exemption (the "Objection"). First, he argued that, in order to claim a homestead

3

exemption under Nevada law, the debtor must actually reside at the property. However, the Larsens had not lived at the Washington Property for at least six years, and a family member was currently living at the property.

Second, he argued that the Nevada homestead exemption protects only real property within Nevada. Therefore, NRS sections 21.090(1)(*l*) and 115.050 cannot apply to the Washington Property.

The Trustee also argued that the Larsens' disclosures about the Washington Property were false. He said that the Washington Property was worth $280,000 (based on a Zillow valuation), not $252,600 as the Larsens listed on their schedules. He also stated that the Larsens only owed $110,000 on the mortgage, not $252,600.

In response to the Objection, the Larsens stated that they regarded the Washington Property as their permanent home. They asserted that their driver's licenses indicate that their residence is at the Washington Property and that Mr. Larsen's earnings statement lists his legal state of residence as "WA." They represented that they paid Washington real property taxes under the state's homestead laws. They also stated that they intended to return to the Washington Property when Mr. Larsen completed his service in June 2020 and that a family member was only "house-sitting" the

4

property in their absence.[2]

They also relied on the Servicemembers Civil Relief Act ("SCRA"). They contended that a strict application of the homestead law in bankruptcy "violates the spirit if not the letter of the SCRA." They cited an SCRA section (50 U.S.C. § 4025) providing that a servicemember's residence shall not be changed "[f]or the purposes of voting." They argued that they were only living in Nevada "under orders of the U.S. Navy" and were "obligated to file in Nevada under the dictates of 28 U.S.C. § 1408."

The Larsens also argued that the Nevada homestead exemption can apply to properties in other states. They relied on *Arrol v. Broach (In re Arrol)*, 170 F.3d 934 (9th Cir. 1999), where the Ninth Circuit allowed a Michigan debtor to file for bankruptcy protection in California and claim a California exemption for real property located in Michigan.

After a hearing, the bankruptcy court overruled the Objection. It held that "Debtors' homestead exemption on [the Washington Property] is allowed because Debtor, Jason Andrew Larson [sic], is in the military[.]"

The Trustee timely filed a notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334

---

[2] The Larsens stated these facts in a legal memorandum accompanied by Mr. Larsen's declaration stating generally that the factual statements in the memorandum were true.

5

and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in overruling the Trustee's Objection to the Larsens' homestead exemption.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's construction and application of state exemption laws. *Klein v. Anderson (In re Anderson)*, 613 B.R. 279, 281 (9th Cir. BAP 2020) (citing *Cisneros v. Kim (In re Kim)*, 257 B.R. 680, 684 (9th Cir. BAP 2000)); *see also Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16 (9th Cir. BAP 2003) ("[Q]uestions regarding the right of a debtor to claim exemptions are questions of law subject to de novo review, whereas the issue of a debtor's intent is a question of fact to be reviewed under the clearly erroneous standard.") (citing *Coughlin v. Cataldo (In re Cataldo)*, 224 B.R. 426, 428-29 (9th Cir. BAP 1998))). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

"[A]n appellate court can review an issue not raised nor objected to prior to appeal if necessary to prevent manifest injustice." *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 n.5 (9th Cir. 2003) (citing *Alexopulos v. Riles*, 784 F.2d 1408, 1411 (9th Cir. 1986)); *see Washington v. Real Time Resolution, Inc. (In re Washington)*, 602 B.R. 710, 716 (9th Cir. BAP 2019) ("While we generally do not consider arguments not

made to the bankruptcy court, there is an exception to that rule when the issue is purely one of law, and the opposing party will suffer no prejudice as a result of the failure to address the issue in the bankruptcy court." (citing *Enewally v. Wash. Mut. Bank (In re Enewally)*, 368 F.3d 1165, 1173 (9th Cir. 2004))); *Barry v. BA Props., Inc. (In re Barry)*, 201 B.R. 820, 825 (C.D. Cal. 1996) (holding that district court would consider issue not raised in the bankruptcy court where "a plain error has occurred and injustice might result if the appellate court does not address it").

## DISCUSSION

Both the Trustee and the Larsens assume that the Larsens may employ the Nevada exemptions. Their arguments focus on whether the Nevada exemptions can apply to property outside of Nevada and whether, under *Van Meter v. Nilsson (In re Nilsson)*, 315 P.3d 966 (Nev. 2013), a debtor may claim a Nevada homestead exemption in property which the debtor does not currently occupy. These arguments present challenging questions. The Nevada statutes do not directly address whether the Nevada homestead exemption can be applied outside of Nevada, and it is unclear whether the broad language of *Nilsson* would control given the different facts of this case.

Federal courts hesitate to decide questions of first impression under state law. *See, e.g., Keown v. Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1031-32 (D. Haw. 2008) ("When state law is unclear, '[a]bsent a strong countervailing

federal interest, the federal court should not elbow its way . . . to render what may be an "uncertain" and "ephemeral" interpretation of state law.'" (quoting *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir. 1992))); *Millar v. Bay Area Rapid Transit Dist.*, 236 F. Supp. 2d 1110, 1120 (N.D. Cal. 2002) (declining to decide "issues of first impression, . . . [because] if such issues are to work their way up through the appellate courts, comity dictates that it should be California appellate courts, not federal courts, that resolve such issues"); *Forsberg v. Pac. Nw. Bell Tel. Co.*, 623 F. Supp. 117, 127-28 (D. Or. 1985), *aff'd*, 840 F.2d 1409 (9th Cir. 1988) (declining to rule on "issues of first impression more appropriately settled in the state courts"). Considerations of federalism mean that federal courts should generally give state courts the first opportunity to address novel issues of state law. In this case, we need not answer these questions, because the parties' shared assumption is incorrect: the Larsens may not employ any of the Nevada exemptions.

Section 522 provides for two sets of exemptions. The first set consists of the exemptions provided under non-bankruptcy federal law and under state or local law of the place of the debtor's "domicile."[3] The second set is listed in § 522(d); but this set is not available if the debtor's domiciliary

---

[3] A special rule determines what law applies if the debtor has had more than one domicile during the two years before the bankruptcy filing. § 522(b)(3)(A); *Drummond v. Urban (In re Urban)*, 375 B.R. 882, 888 (9th Cir. BAP 2007) ("If the debtor was not domiciled in a single state during that period, then the applicable state law is that of the state in which the debtor was domiciled for the 180 days immediately preceding the 730-day period, or for the longest portion of that 180-day period.").

8

state has "opted out" of the federal exemptions. *Drummond v. Urban (In re Urban)*, 375 B.R. 882, 888 (9th Cir. BAP 2007).

Thus, under § 522(b), the exemptions available to a debtor depends on the law of the state in which the debtor is domiciled. *Id.* ("The 'State law that is applicable to the debtor' is determined by where the debtor was domiciled for the 730 days (two years) immediately preceding the filing of bankruptcy." (quoting § 522(b)(3)(A))); *In re Stanton*, 457 B.R. 80, 85 (Bankr. D. Nev. 2011) ("[T]he state in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition provides the applicable slate of exemptions. The key concept is 'domicile.'").

The word "domicile" in § 522 has its usual legal meaning: the place which is the debtor's intended permanent residence. *See In re Urban*, 375 B.R. at 888 n.14 ("For purposes of § 522(b), 'domicile' means actual residence coupled with a present intention to stay there." (citing *Lowenschuss v. Selnick (In re Lowenschuss)*, 171 F.3d 673, 684 (9th Cir. 1999))); *Donald v. Curry (In re Donald)*, 328 B.R. 192, 202 (9th Cir. BAP 2005) ("The meaning of a term such as 'domicile' in a federal statute ordinarily presents a federal question to be determined under federal common law unless Congress unambiguously adopts state law."). "In general, domicile is one's permanent home, where one resides with the intention to remain or to which one intends to return and to which certain rights and duties are

9

attached." *In re Donald*, 328 B.R. at 202."Domicile" and "residence" are not necessarily the same: a person can reside in a place that is not the person's residence, *see id.* ("One may reside in one place and be domiciled in another."); a person can have multiple residences but only one domicile, *see In re Schayes*, 483 B.R. 209, 213 (Bankr. D. Ariz. 2012) ("A person can have numerous residences, but at any particular time only one domicile."); and residence turns on physical presence while domicile hinges largely on intent, *see In re Rodenbough*, 579 B.R. 545, 549 (Bankr. D. Idaho 2018) ("Of course, a debtor's residence may be different from his or her domicile because '[r]esidence, by contrast, may refer to living in a particular locality without the intent to make it a fixed and permanent home.'").

It is important to note that debtors may file bankruptcy cases in states whose exemptions they are not allowed to claim. A debtor may file a bankruptcy case where the debtor resides, is domiciled, **or** has its principal place of business or principal assets. 28 U.S.C. § 1408. But a debtor can claim exemptions only under the law of the debtor's domiciliary state.

The uncontradicted evidence in the record[4] establishes that the Larsens were domiciled in Washington, not Nevada. They regarded the

---

[4] The Trustee argues that Mr. Larsen's declaration was generic, not fact-specific, and not in compliance with federal law. The first two of these three points are undoubtedly correct; the declaration only stated that Mr. Larsen had read the response to the Objection and that the information therein was true to his knowledge. But the Trustee offers no authority for the proposition that the declaration was inadmissible, and the bankruptcy court did not abuse its discretion when it accepted the declaration.

10

Washington Property as their permanent home. They were away from that property only due to the demands of Mr. Larsen's military service. They stated that they intended to return to the property upon Mr. Larsen's retirement, just a few months after the bankruptcy filing.[5] The Trustee attempted to discredit this evidence, but he offered no contrary evidence.[6]

This means that the Trustee was arguing for the correct result, although for the wrong reason. The Larsens may not assert the Nevada homestead exemption. But this is not because of the specifics of the Nevada homestead exemption; rather, the Larsens may not assert any Nevada exemption at all because they were not domiciled in Nevada.

This does not mean that the Larsens have no way to protect the Washington Property. Debtors claim exemptions by listing them on Schedule C. "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." Rule 1009. A court can bar an amended claim of exemption only in limited circumstances. *See, e.g., Lua v. Miller (In re Lua)*, 692 F. App'x 851

---

[5] The Larsens' counsel stated at oral argument that the Larsens had in fact done what they said they intended to do: they returned to Washington state to live in the Washington Property after Mr. Larsen's retirement in June 2020.

[6] The Trustee attacked the Larsens' credibility, contending that they understated the value of the Washington Property, overstated the amount of the mortgage, misstated their employment status, and inaccurately claimed that Mrs. Larsen was an active servicemember. The bankruptcy court rejected these contentions (at least implicitly), and we see no abuse of discretion.

11

(9th Cir. 2017). Thus, if they choose to do so, the Larsens could amend their schedule of exemptions to claim a homestead exemption under Washington law, *see, e.g.*, Wash. Rev. Code §§ 6.13.010, 6.13.030, or under the federal homestead exemption, § 522(d)(1).[7] If he chooses to do so, the Trustee could then object to that new claim on any appropriate basis.

## CONCLUSION

The bankruptcy court erred in overruling the Trustee's Objection. We VACATE the court's order and REMAND for further proceedings regarding the Washington Property.

---

[7] As we have noted, § 522(b)(2) permits states to prevent their domiciliaries from using the federal bankruptcy exemptions. Washington has not exercised this "opt out" authority. *Wicklund v. Robert D. Johnson Tr. (In re Wicklund)*, No. BAP WW-14-1424-KiFJu, 2016 WL 1024096, at *5 (9th Cir. BAP Mar. 15, 2016); *In re Good*, 588 B.R. 573, 575 (Bankr. W.D. Wash. 2018). In contrast, Nevada has "opted out." Nev. Rev. Stat. § 21.090(3); *Leavitt v. Alexander (In re Alexander)*, 472 B.R. 815, 821 (9th Cir. BAP 2012).